

Title Division, 1132 Bishop Street, Suite 400
Honolulu, Hawaii 96813
Telephone: (808) 531-0261
Facsimile: (808) 524-1251
Website: www.itchawaii.com

December 15, 2005

| | |
|---|---|
| Escrow Officer: | **Brenda Ioane** |
| Phone: | **(808)961-4646** |
| Fax No.: | **(808)969-1541** |
| E-Mail: | **bioane@itchawaii.com** |

| | |
|---|---|
| **TITLE OFFICER:** | Brent Honda |
| Phone: | (808)539-7562 |
| Fax No.: | (866)759-3003 |
| E-Mail: | bhonda@itchawaii.com |
| Order Number: | 302-307458 |

| | |
|---|---|
| Buyer: | Klika |
| Owner: | Top One, Inc. |

Thank You for your confidence and support. We at Island Title Corporation pledge to you:

*"The Touch of Aloha"...Our Island Promise...*

EXHIBIT A

# FIRST AMERICAN TITLE INSURANCE COMPANY
# INFORMATION

The Title Insurance Commitment is a legal contract between you and the company. It is issued to show the basis on which we will issue a Title Insurance Policy to you. The Policy will insure you against certain risks to the land title, subject to the limitations shown in the policy.

The Company will give you a sample of the Policy form, if you ask.

The Commitment is based on the land title as of the Commitment Date. Any changes in the land title or the transaction may affect the Commitment and the Policy.

The Commitment is subject to its Requirements, Exceptions and Conditions.

This information is not part of the title insurance commitment.

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| Agreement to Issue Policy | | 3 |
| Schedule A | | |
| 1. | Commitment Date | 4 |
| 2. | Policies to be Issued, Amounts and Proposed Insured | 4 |
| 3. | Interest in the Land and Owner | 4 |
| 4. | Description of the Land | 4 |

Schedule B-1 - Requirements

Schedule B-2 - Exceptions

Conditions

**YOU SHOULD READ THE COMMITMENT VERY CAREFULLY.**
**If you have any questions about the Commitment,**
**please contact the issuing office.**

# COMMITMENT FOR TITLE INSURANCE

## Issued by

## *First American Title Insurance Company*

### Agreement to Issue Policy

**FIRST AMERICAN TITLE INSURANCE COMPANY**

### INFORMATION

We agree to issue a policy to you according to the terms of this Commitment.

When we show the policy amount and your name as the proposed insured in Schedule A, this Commitment becomes effective as of the Commitment Date shown in Schedule A.

If the Requirements shown in this Commitment have not been met within six months after the Commitment Date, our obligation under this Commitment will end. Also, our obligation under this Commitment will end when the Policy is issued and then our obligation to you will be under the Policy.

Our obligation under this Commitment is limited by the following:

    The Provisions in Schedule A.

    The Requirements in Schedule B-1.

    The Exceptions in Schedule B-2.

    The Conditions.

This Commitment is not valid without Schedule A and Sections 1 and 2 of Schedule B.

IN WITNESS WHEREOF, First American Title Insurance Company has caused its corporate name to be hereunto affixed by its duly authorized agents on the date shown in Schedule A.

## First American Title Insurance Company

By its authorized issuing agent

**Island Title Corporation
Title Division, 1132 Bishop Street, Suite 400
Honolulu, HI 96813**

# CONDITIONS

1. DEFINITIONS
   (a) "Mortgage" means mortgage, deed of trust or other security instrument.
   (b) "Public Records" means title records that give constructive notice of matters affecting the title according to the state law where the land is located.

2. LATER DEFECTS
   The Exceptions in Schedule B - Section Two may be amended to show any defects, liens or encumbrances that appear for the first time in the public records or are created or attached between the Commitment Date and the date on which all of the Requirements (a) and (c) of Schedule B - Section One are met. We shall have no liability to you because of this amendment.

3. EXISTING DEFECTS
   If any defects, liens or encumbrances existing at Commitment Date are not shown in Schedule B, we may amend Schedule B to show them. If we do amend Schedule B to show these defects, liens or encumbrances, we shall be liable to you according to Paragraph 4 below unless you knew of this information and did not tell us about it in writing.

4. LIMITATION OF OUR LIABILITY
   Our only obligation is to issue to you the Policy referred to in this Commitment, when you have met its Requirements. If we have any liability to you for any loss you incur because of an error in this Commitment, our liability will be limited to your actual loss caused by your relying on this Commitment when you acted in good faith to:

   Comply with the Requirements shown in Schedule B - Section One
   OR
   Eliminate with our written consent any Exceptions shown in Schedule B - Section Two.

   We shall not be liable for more than the Policy Amount shown in Schedule A of this Commitment and our liability is subject to the terms of the Policy form to be issued to you.

5. CLAIMS MUST BE BASED ON THIS COMMITMENT
   Any claim, whether or not based on negligence, which you may have against us concerning the title to the land must be based on this commitment and is subject to its terms.

## SCHEDULE A

1. Commitment Date: December 02, 2005 at 8:00 A.M.

2. Policy or Policies to be issued:

                                                     Amount

   (A)    Alta Owners (Standard)                     $55,000.00

   Proposed Insured:
   Peter Klika

3. The estate or interest in the land described in this Commitment is **Leasehold** and, is owned at the Commitment Date by:

   **Country Club-Hawaii, Inc., duly authorized to accept and execute trusts within the State of Hawaii, Trustee under the provisions of a certain Trust Agreement dated the 19th day of September, 1987, and pursuant to the Land Trust Act, Chapter 558 of the Hawaii Revised Statutes, with power to sell, lease, mortgage and other powers**

4. The land referred to in this Commitment is described as follows:

   SEE EXHIBIT "A" ATTACHED HERETO

**SCHEDULE B**

**SECTION ONE
REQUIREMENTS**

The following requirements must be met:

(A) Pay the agreed amounts for the interest in the land and/or the mortgage to be insured.

(B) Pay us the premiums, fees and charges for the policy.

(C) Documents satisfactory to us creating the interest in the land and/or mortgage to be insured must be signed, delivered and recorded.

(D) You must tell us in writing the name of anyone not referred to in this Commitment who will get an interest in the land or who will make a loan on the land. We may then make additional requirements or exceptions.

(E) You must tell us in writing if the funds from any loans to be insured will be used for construction and/or home improvement purposes. We may then make additional requirements or exceptions.

(F) You must tell us in writing of any changes in the marital status of anyone with a recorded interest in the land. We may then make additional requirements or exceptions.

(G) You must tell us in writing if you will be submitting Releases for any of the exceptions noted in Schedule B, Section II, Part II after the recordation of the documents creating the interest to be insured.

**(H) Copies of the following concerning Country Club-Hawaii, Inc.:**

    A) **Corporate Resolution empowering said Country Club-Hawaii, Inc. to buy, sell, mortgage the subject property and designating the person(s) empowered with the capacity to execute all necessary documents.**
    B) **Certificate of Good Standing**

**(I) Copies of the following concerning Top One, Inc.:**

    A) **Corporate Resolution empowering said Top One, Inc. to buy, sell, mortgage the subject property and designating the person(s) empowered with the capacity to execute all necessary documents.**
    B) **Certificate of Good Standing**

**(J) Pay and satisfy of record item no(s) 12a in Schedule B Section II, Part II.**

## SCHEDULE B

### SECTION TWO
### EXCEPTIONS

Any policy we issue will have the following exceptions unless they are taken care of to our satisfaction.

**PART I:**

1. Taxes or assessments which are not shown at Date of Policy, as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, reassessments, or notices of such proceedings, whether or not shown by the records of such agency of by the public records.

2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.

3. Easements, claims of easement or encumbrances which are not shown by the public records.

4. Unpatented mining claims; reservations or exceptions in patents or in acts authorizing the issuance thereof; water rights, claims or title to water.

5. Any lien, or right to a lien for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

6. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.

**(Items 2 through 6 will not appear on an ALTA Extended Coverage Loan Policy provided that the requirements appearing under Schedule B, Section I of this Commitment have been complied with.)**

**PART II:**

1.  Tax Map Key No. (3) 2-1-005-020-0063

    See Tax Report attached herein.

    Property Address:     121 Banyan Drive #332
                          Hilo, Hawaii 96720

2.  Title to all mineral and metallic mines reserved to the State of Hawaii.

3.  The property borders on the ocean and is subject to the provisions of Hawaii Revised Statue 205A. Sections 41 to 49 relative to shoreline setbacks and prohibitions on use, and to the regulations of the Land Use Commission and the County Planning Department.

4.  UNRECORDED GENERAL LEASE NO. 3269

    | | |
    |---|---|
    | Dated: | June 15, 1948 |
    | Lessor: | Territory of Hawaii, by its Commissioner of Public Lands |
    | Lessee: | A.M.M. Osorio, (no marital status shown) |
    | Term: | 21 years commencing from June 1, 1949 |

    UNRECORDED AMENDMENTS OF LEASE

    | | |
    |---|---|
    | Dated: | November 16, 1962 and July 2, 1968 |
    | Re: | Extension of term to March 14, 2015 |

    MESNE ASSIGNMENT OF LEASE

    | | |
    |---|---|
    | Dated: | September 19, 1987 |
    | Recorded: | Book 21727, Page 228 |
    | Assignor: | Country Club-Hawaii, Inc. |
    | Assignee: | Country Club-Hawaii, Inc., duly authorized to accept and execute trusts within the State of Hawaii, Trustee under the provisions of a certain Trust Agreement dated the 19th day of September, 1987, and pursuant to the Land Trust Act, Chapter 558 of the Hawaii Revised Statutes, with power to sell, lease, mortgage and other powers |

5.  ESTATE FOR YEARS

    Dated:          September 19, 1987
    Recorded:       Book 21727, Page 240
    In favor of:    M. & Associates, Inc., a Hawaii corporation
    Term:           To and including March 14, 2015

    (As to Parcel Second)

    MESNE ASSIGNMENT OF ESTATE FOR YEARS

    Dated:      September 19, 1987
    Recorded:   Book 21727, Page 240
    Assignor:   Country Club-Hawaii, Inc.
    Assignee:   Country Club-Hawaii, Inc., duly authorized to accept and execute trusts within the State of Hawaii, Trustee under the provisions of a certain Trust Agreement dated the 19th day of September, 1987, and pursuant to the Land Trust Act, Chapter 558 of the Hawaii Revised Statutes, with power to sell, lease, mortgage and other powers

6.  EASEMENT, as disclosed by Instrument

    Dated:      January 20, 1966
    Recorded:   Book 9167, Page 2

    (As to Parcel Second)

7.  Regular System Condominium Map No. 1076.

8.  Covenants, conditions, restrictions, reservations, agreements, obligations, easements and other provisions set forth in:
    Declaration of Condominium Property Regime, as amended

    Dated:      May 19, 1987
    Recorded:   Book 20954, Page 93
                to which reference is hereby made, but deleting any covenant, condition or restriction indicating a preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status, or national origin to the extent such covenants, conditions or restrictions violate 42 USC 3604(c) or Section 515-6, HRS, as amended

9.  By-Laws of the Association of Apartment Owners of Country Club Hawaii, as amended and restated

    Dated:      May 19, 1987
    Recorded:   Book 20954, Page 119

10. Any adverse claim arising on any lack of consent by the State of Hawaii on any and all leases affecting the property described herein.

11. Any and all covenants, conditions, restrictions and easements encumbering the apartment herein mentioned, and/or the common interest appurtenant thereto, as created by or mentioned in said Declaration, as amended, and/or as delineated on said Condominium Map.

12. AGREEMENT OF SALE

   Seller: Country Club-Hawaii, a Hawaii corporation, Trustee under the provisions of a certain Trust Agreement dated the 19th day of September, and pursuant to the Land Trust Act, Chapter 558 of the Hawaii Revised Statutes, with power to sell, lease, mortgage and other powers
   Purchaser: Top One, Inc., a Hawaii corporation
   Dated: February 13, 1996
   Recorded: Document No. 96-028113
   Purchase Price: $35,000.00

   a. JUDGMENT

      Dated: August 18, 2005
      Filed: United States District Court
      District of Hawaii
      CV 03-00659 HG-KSC
      Recorded: Document No. 2005-177471
      Amount: $452,974.62
      Plaintiff: Mark L. Dehl
      Defendant: Top One, Inc., Randy A. Galima, et al

Page No. 10 - Order No.: 307458

**EXHIBIT "A"**

FIRST:

APARTMENT NO. 332 OF THAT CERTAIN CONDOMINIUM PROJECT KNOWN AS "COUNTRY CLUB HAWAII", AS SHOWN ON CONDOMINIUM MAP NO. 1076 AND DESCRIBED IN THE DECLARATION OF HORIZONTAL PROPERTY REGIME DATED MAY 19, 1987, RECORDED IN THE BUREAU OF CONVEYANCES, STATE OF HAWAII, IN BOOK 20954, PAGE 93, AS AMENDED.

TOGETHER WITH APPURTENANT EASEMENTS AS FOLLOWS:

(A) NON-EXCLUSIVE EASEMENTS IN THE COMMON ELEMENTS DESIGNED FOR SUCH PURPOSES FOR INGRESS TO, EGRESS FROM, UTILITY SERVICES FOR AND SUPPORT OF SAID APARTMENT; IN THE OTHER COMMON ELEMENTS FOR USE ACCORDING TO THEIR RESPECTIVE PURPOSES.

(B) EXCLUSIVE EASEMENTS TO USE OTHER LIMITED COMMON ELEMENTS APPURTENANT THERETO DESIGNATED FOR ITS EXCLUSIVE USE BY THE DECLARATION, AS AMENDED.

SECOND: AN UNDIVIDED .69193 PERCENTAGE INTEREST IN ALL COMMON ELEMENTS OF THE PROJECT (EXCLUSIVE OF LAND) AS ESTABLISHED FOR SAID APARTMENT BY THE DECLARATION, OR SUCH OTHER INTEREST AS HEREINAFTER ESTABLISHED FOR SAID APARTMENT BY ANY AMENDMENT OF THE DECLARATION, AS TENANT IN COMMON WITH THE OTHER OWNERS AND TENANTS THEREOF.

THIRD: AN UNDIVIDED .69193 PERCENTAGE LEASEHOLD INTEREST AS TENANT IN COMMON WITH ALL OTHER APARTMENT OWNERS OF THE PROJECT, IN AND TO THE LAND.

THE LAND ON WHICH SAID CONDOMINIUM IS LOCATED:

PARCEL FIRST:

THAT CERTAIN PARCEL OF LAND (PORTION OF THE GOVERNMENT (CROWN) LAND OF WAIAKEA) BEING LOT 10 OF THE "OCEAN VIEW LOTS", SITUATE AT WAIAKEA, SOUTH HILO, ISLAND AND COUNTY OF HAWAII, STATE OF HAWAII, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTH CORNER OF THIS LOT NEAR EDGE OF SEA BLUFF AND AT THE EAST CORNER OF GRANT 10,119 TO HARRIET BLANCHE ROSE (LOT 9, OCEAN VIEW LOTS), THE COORDINATES OF SAID POINT OF BEGINNING REFERRED TO GOVERNMENT SURVEY TRIANGULATION STATION "MOKUOLA 2", BEING 466.31 FEET SOUTH AND 1757.47 FEET EAST, AS SHOWN ON GOVERNMENT SURVEY REGISTERED MAP 4016 AND RUNNING BY AZIMUTHS MEASURED CLOCKWISE FROM SOUTH:

ALONG SEA BLUFF AT HIGHWATER MARK TO THE NORTH CORNER OF LOT 11, OCEAN VIEW LOTS, THE DIRECT AZIMUTH AND DISTANCE BEING:

1. 337° 37' 175.32 FEET;

2. 44° 52' 220.60 FEET ALONG LOT 11, OCEAN VIEW LOTS;

3. 150° 02' 166.03 FEET ALONG GRANT 1011 TO HARRIET BLANCHE ROSE (LOT 9, OCEAN VIEW LOTS) AND 20-FOOT ROADWAY;

4. 224° 32' 45.00 FEET ALONG ABANDONED ROADWAY CONVEYED BY TERRITORY OF HAWAII TO MRS. HARRIET BLANCHE ROSE (LOT 9, OCEAN VIEW LOTS) TO THE POINT OF BEGINNING AND CONTAINING AN

AREA OF 0.92 ACRE, MORE OR LESS.

SAVING AND EXCEPTING THE PORTION THEREOF LYING SEAWARD OF THE DEBRIS LINE.

PARCEL SECOND:

THAT CERTAIN PARCEL OF LAND (PORTION OF THE LAND DESCRIBED IN LAND PATENT GRANT 10,119 TO HARRIET BLANCHE ROSE) BEING A PORTION OF LOT 9 OF THE "OCEAN VIEW LOTS", SITUATE AT WAIAKEA, SOUTH HILO, ISLAND AND COUNTY OF HAWAII, STATE OF HAWAII, BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

"WHICH COMMENCES AT A POINT FORMED BY THE SOUTHEAST CORNER OF WAILOA DRIVE, AND THE RIGHT OF WAY LEADING FROM WAILOA DRIVE TO LOT 10, AT AN IRON SPIKE, RUNNING THENCE BY TRUE AZIMUTHS:

1. 224° 32' 96.01 FEET ALONG RIGHT OF WAY TO AN IRON SPIKE;

2. 330° 02' 154.25 FEET ALONG LOT 10 TO AN IRON SPIKE;

3. 69° 38' 70.76 FEET TO AN IRON SPIKE;

4. 139° 00' 54" 119.00 FEET ON A CURVE ALONG WAILOA DRIVE TO THE POINT OF BEGINNING AND CONTAINING AN AREA OF 10,890 SQUARE FEET, MORE OR LESS.



# Privacy Policy

Island Title Corporation, its Island Contract Collections division, and its affiliated companies, Island Title Exchange and Real Estate/Title Solutions, LLC ("Island Title") respect your right to privacy. We believe it is important that you know how we use personal identifiable information, also called nonpublic personal information, which we collect from you. The purpose of this notice is to advise you how we meet federal regulations to guard your nonpublic personal information in real estate transactions that we handle for personal, family, or household purposes. We are required by law to give you this privacy notice if you have a customer relationship with us.

### Information We Collect
If you are a seller, buyer, or borrower in a real estate transaction for which a title order, an escrow, or collection account has been set up at Island Title, nonpublic personal information we collect usually comes from several sources such as:
- Information provided by you on any applications, supporting documents, or other forms, such as your name, address, and Social Security number.
- Information provided by your lender, real estate sales agent, or others, including those provided online through our Web site, such as your loan number, account balance, and where you work.
- Information from your transactions with our company or affiliates and kept by us such as the number and type of transactions we have handled in the past for you.

### Our Information Disclosure Practices
We may disclose all of the information we collect above as permitted by law. We do not disclose any nonpublic personal information about you, even when you are a former customer, with anyone, except as permitted by law.
1. For example, the law permits us to disclose nonpublic personal information with non-affiliated third parties such as title insurance underwriters or real estate attorneys to process your request for our products or services.
2. The law also permits us to disclose nonpublic personal information about you to our own auditors or to state and federal regulatory agencies such as state bank examiners or the Internal Revenue Service.
3. If we are requested to disclose nonpublic personal information about you because of a subpoena or similar legal process, we attempt to notify you that your escrow records containing confidential information have been requested unless we are prohibited by law or by court order.
4. Your right to opt out from disclosing information in the above examples would not apply. They are disclosures permitted by law. "Opt out" means a choice you can make to tell us not to disclose information about you.

We do not disclose or sell nonpublic personal information about you to direct marketers, retailers, or to for-profit or non-profit organizations.

### How We Guard Your Information
- It is our company policy to handle your nonpublic personal information with utmost confidentiality.
- To keep your information safe and secure, we maintain physical, electronic, and procedural safeguards that comply with federal regulations.
- We restrict access to nonpublic personal information about you to those Island Title employees who need the information in order to provide you with our products or services.
- We train our employees to make sure that your nonpublic personal information will be handled responsibly according to this privacy notice.

### Changes to Our Privacy Notice
- We may amend this privacy notice if our policies or practices change and we will inform you of those changes as required by law.
- You will receive a privacy notice from us annually so long as you maintain an ongoing customer relationship with Island Title.



# The First American Corporation
# First American Title Insurance Company

# Privacy Policy

## We Are Committed to Safeguarding Customer Information

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information – particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, together with our parent company, The First American Corporation, we have adopted this Privacy Policy to govern the use and handling of your personal information.

## Applicability

This Privacy Policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity. First American has also adopted broader guidelines that govern our use of personal information regardless of its source. First American calls these guidelines its *Fair Information Values*, a copy of which can be found on our website at www.firstam.com.

## Types of Information

Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;
- Information about your transactions with us, our affiliated companies, or others; and
- Information we receive from a consumer reporting agency.

## Use of Information

We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and trust and investment advisory companies, or companies involved in real estate services, such as appraisal companies, home warranty companies, and escrow companies. Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliated companies, or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

## Former Customers

Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

## Confidentiality and Security

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy and First American's *Fair Information Values*. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

© 2001 The First American Corporation • All Rights Reserved



# Island Title Corporation

688 Kinoole Street, Suite 121 • Hilo, HI 96720

## Seller's Estimated Settlement Statement

**Property:** 121 Banyan Drive, #332, Hilo, HI 96720

**File No:** 302-307458
**Officer:** Brenda Ioane/BI
**New Loan No:**
**Settlement Date:**
**Disbursement Date:** 02/03/2006
**Print Date:** 1/27/2006, 10:58 AM

**Buyer:** Shangri-La Trust II
**Address:** P.O. Box 1740, Mercer Island, WA 98040
**Seller:** Top One, Incorporated
**Address:** 121 Banyan Drive, #332, Hilo, HI 96720

| Charge Description | Seller Charge | Seller Credit |
|---|---|---|
| **Consideration:** | | |
| Total Consideration | | 55,000.00 |
| **Prorations:** | | |
| Association Dues 02/03/06 to 02/28/06 @$411.70/mo | | 367.59 |
| County Tax 02/03/06 to 07/01/06 @$173.65/semi | | 140.82 |
| **Commission:** | | |
| Commission Paid at Settlement to Ala Kai Realty, Inc. | 3,300.00 | |
| **Attorney:** | | |
| Attorney's Fees to Sanford K. Okura, Attorney At Law A Law Corporation | 748.95 | |
| **Payoff Loan(s):** | | |
| Lender: Rocca, Louie & Hiroaka Brian A. Bilberry, Esq. | | |
| Principal Balance - Rocca, Louie & Hiroaka Brian A. Bilberry, Esq. | 39,596.09 | |
| Lender: Country Club-Hawaii, Inc. | | |
| Principal Balance - Country Club-Hawaii, Inc. | 10,514.10 | |
| **Title/Escrow Charges to:** | | |
| Tax Search Fee - Island Title Corporation $5.00 General Excise Tax: $0.21 | 5.21 | |
| FAM - ALTA Standard Coverage Owners Policy - Island Title Corporation | 268.20 | |
| Escrow Fee - Island Title Corporation $289.50 General Excise Tax: $12.06 | 301.56 | |
| Notary Fee - Island Title Corporation $30.00 General Excise Tax: $1.25 | 31.25 | |
| Release Tracking Fees - Island Title Corporation | 50.00 | |
| Recording Fees Advanced - Deed - Island Title Corporation | 25.00 | |
| State Conveyance Tax - Island Title Corporation | 82.50 | |
| **Disbursements Paid:** | | |
| Maintenance Fees-February to Country Club Hawaii AOAO | 411.70 | |
| Tax Installment: Amount to Director of Finance Real Property | 173.85 | |
| **Totals** | **55,508.41** | **55,508.41** |

SELLER(S):

Top One, Incorporated


By: .